**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DOMINIQUE POULIOT, Ph.D.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | **Case No.:** |
| ) | |
| **THE BOARD OF TRUSTEES OF THE** ) | |
| **UNIVERSITY OF ILLINOIS, DR. DALE** ) | |
| **A. VAN HARLINGEN, Ph.D., DENISE** ) | |
| **DONNELLY, individually, CRAIG** ) | **Jury Trial Demanded** |
| **HOEFER, individually,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

Plaintiff, Dominique Pouliot, by her attorneys, Keith L. Hunt and Bradley E. Faber of Hunt & Associates, P.C. hereby complain against Defendants The Board of Trustees of the University of Illinois, Dr. Dale A. Van Harlingen, Ph.D., Denise Donnelly, individually, and Craig Hoefer, individually as follows:

## I.
## NATURE OF THE ACTION

1.     Plaintiff brings this suit alleging a violation of her Constitutional right to Equal Protection based on her age and national origin, enforceable through 42 U.S.C. § 1983. Plaintiff also claims violations of the Age Discrimination in Employment Act (29 U.S.C. § 621, *et seq.*), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*) (for national origin discrimination), the Fair Labor Standards Act, (29 U.S.C. § 206, *et seq.*) and the Equal Pay Act (29 U.S.C. § 206(d), *et seq.*) and state court causes of action.

2.      Plaintiff seeks declaratory and injunctive relief against the Board of Trustees on her Count I and Count II claims brought pursuant to 42 U.S.C. § 1983.

3.      Plaintiff seeks declaratory judgment, injunctive relief, and monetary damages, as well as other remedies with respect to her remaining claims.

## THE PARTIES

4.      The Plaintiff, Dominique Pouliot, Ph.D., was at all relevant times a citizen of Montreal, Quebec, Canada.

5.      The Plaintiff was born in 1952, and as of the date of filing this lawsuit is sixty-six (66) years old.

6.      The Defendant, The Board of Trustees for the University of Illinois (the "Board") is an Illinois corporation, commonly referred to as the University of Illinois and is a citizen of Illinois.

7.      The Board is comprised of nine members appointed by the Illinois Governor and three student-members elected by the student bodies at the Chicago, Urbana-Champaign, and Springfield campuses.

8.      All of the members of the Board are citizens of Illinois, with most of the members identifying themselves as being residents of the Northern District of Illinois, as they primarily live or work in Chicago, Illinois and its surrounding suburbs. By way of example:

   a. Trustee Ramon Cepeda resides in the Northern District of Illinois and works in Chicago, Illinois as the Senior Vice President and Managing Director at The Northern Trust Company;

b.  Trustee Donald Edwards resides in the Northern District of Illinois and works in Chicago, Illinois as the CEO at Flexpoint Ford LLC;

c.  Trustee Patrick J. Fitzgerald resides in the Northern District of Illinois and works in Chicago, Illinois as a Partner at Skadden, Arps, Slate, Meagher & Flohm;

d.  Trustee James D. Montgomery resides in the Northern District of Illinois and is the principal of the Chicago, Illinois law firm James D. Montgomery and Associates, Ltd.;

e.  Trustee Sanford Perl resides in the Northern District of Illinois and is a partner at the Chicago, Illinois law firm of Kirkland & Ellis LLP;

f.  Trustee Jill B. Smart resides in the Northern District of Illinois and is the President of the Downers Grove, Illinois-based National Academy of Human Resources;

g.  Student Trustee Trayshawn M. W. Mitchell, upon information and belief, resides Harvey, Illinois, in the Northern District of Illinois;

h.  Student Trustee Darius Newsome, upon information and belief, resides in Chicago, Illinois in the Northern District of Illinois;

i.  Student Trustee Shaina Humphrey, upon information and belief, resides in Waukegan, Illinois in the Northern District of Illinois.

9.  The Board sets and oversees the policies and procedures with respect to employment and employment decisions at the University of Illinois campuses.

10.  The Board has a role in the academic hiring process for University of Illinois employees, including that it extends and approves offers of employment for University of Illinois employees.

11.  At all relevant times, the Board was acting under color of law.

12.    Defendant Professor Dale J. Van Harlingen ("Van Harlingen") is the Chairperson for the University of Illinois Physics Department, and is a citizen of Champaign, Illinois.

13.    Van Harlingen acted under color of state law while engaging in the actions alleged in this complaint.

14.    Defendant Denise Donnelly ("Donnelly") is a Human Resources Associate at the University of Illinois and is a citizen of Urbana, Illinois.

15.    Donnelly acted under color of state law while engaging in the actions alleged in this complaint.

16.    Defendant Craig Hoefer ("Hoefer") is Senior Associate University Counsel for the University of Illinois, and is a citizen of Illinois.

17.    Hoefer acted under color of state law while engaging in the actions alleged in this complaint.

18.    Each of Van Harlingen, Donnelly and Hoefer (hereafter, collectively the "individual Defendants") is sued in his or her individual capacity for equitable and injunctive relief, and for money damages and other remedies.

## JURISDICTION AND VENUE

19.    This Court has jurisdiction over this action under 28 U.S.C. § 1331 because this action involves claims arising under federal law, including under 42 U.S.C. § 1983, the Age Discrimination in Employment Act (29 U.S.C. § 621, *et seq.*), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*), the Fair Labor Standards Act, (29 U.S.C. § 206, *et seq.*) and the Equal Pay Act (29 U.S.C. § 206(d), *et seq.*).

20.     This Court also has jurisdiction under the federal diversity jurisdiction statute, 28 U.S.C. § 1332, because the Plaintiff is a citizen of Montreal, Quebec, Canada, all of the Defendants are citizens of Illinois, and the amount in controversy exceeds $75,000.

21.     This Court has supplemental jurisdiction over Plaintiff's state-law causes of action pursuant to 28 U.S.C. § 1367 as they arise from the same core of operative facts as give rise to her federal law claims.

22.     Venue is proper under 28 U.S.C § 1391(b)(1) and (d) because one or more of the Defendants reside in this district, including that the University of Illinois has a Chicago, Illinois campus and nearly all of the Board of Trustees' members reside and work in this judicial district.

## BACKGROUND

23.     From 2011-September, 2016, Plaintiff was employed by the University of Illinois as a Postdoctoral Research Associate.

24.     For years, Plaintiff worked in academia as a professor at John Abbott College in St. Anne De Bellevue, Quebec.

25.     Plaintiff continued her education, and in 2010 obtained her Ph.D. in Condensed Matter Theoretical Physics at McGill University in Montreal, Canada.

26.     In or about 2010, Plaintiff met University of Illinois professor and physicist Sir Anthony James Leggett, KBE, FRS, PhD. ("Dr. Leggett" or "Leggett").

27.     Within Plaintiff's field, Dr. Leggett is widely seen as one of the preeminent theoretical physicists.

5

28.     In 2003, Dr. Leggett was honored with the Nobel Prize for his contributions to the theory of superfluidity.

29.     This theory and research involves the movement of fluids at extremely low temperature without friction or viscosity.

30.     Plaintiff expressed interest working for Dr. Leggett, who suggested she apply to a position to assist him with his research at the University of Illinois.

31.     In order for Plaintiff, a Canadian citizen, to work at the University of Illinois, she was required to obtain a visa.

32.     In 2011, Plaintiff applied and received a conditional offer to work as a Postdoctoral Research Associate with the University of Illinois' Physics Department.

33.     Once Plaintiff received a conditional offer of employment, she applied for and received a J-1 visa.

## PLAINTIFF'S EMPLOYMENT

34.     In September, 2011, Plaintiff was hired to fill a specific job number, "U82879-00", titled "Postdoctoral Research Associate."

35.     The Physics Department at the University of Illinois employs over forty (40) Postdoctoral Research Associates.

36.     Most of the Postdoctoral Research Associates employed in the University of Illinois Physics Department are under forty (40) years old.

37.     Many Postdoctoral Research Associates employed in the University of Illinois Physics Department are not United States citizens.

38.     Plaintiff was issued a University employee identification number.

39.     Other Postdoctoral Research Associates in the University of Illinois Physics Department were provided employee identification numbers.

40.     The University assigned Plaintiff a campus office within the Physics Department building in which she was to perform her work.

41.     The University of Illinois assigned other Physics Department Postdoctoral Research Associates a campus office within the Physics Department building in which they were to perform their work.

42.     The University gave Plaintiff special employee access to campus resources, research facilities and the library.

43.     The University gave other Physics Department Postdoctoral Research Associates special employee access to campus resources, research facilities and the library.

44.     Plaintiff performed tasks as directed by and under the supervision of professors and senior research staff in the University Physics Department.

45.     Other Physics Department Postdoctoral Research Associates' duties included performing tasks as directed by and under the supervision of professors and senior research staff in the University Physics Department.

46.     The University required Plaintiff attend meetings and seminars in University offices, classrooms, lecture halls and laboratories.

47.     The University required other Physics Department Postdoctoral Research Associates to attend meetings and seminars in University offices, classrooms, lecture halls and laboratories.

48.     The University required Plaintiff have regular office hours.

7

49.     The University required other Physics Department Postdoctoral Research Associates to have regular office hours.

50.     The University sent Plaintiff on assignments to attend off-site conferences and present research findings on behalf of Dr. Leggett and the University of Illinois, including to Germany.

51.     The University assigned other Physics Department Postdoctoral Research Associates to attend off-site conferences and present research findings on behalf of the University of Illinois.

52.     The University only permitted Plaintiff to be away from the campus for an extended period of time if she first obtained authorization and if the period away from campus was related to her work for the University of Illinois.

53.     The University only permitted other Physics Department Postdoctoral Research Associates to be away from the campus for an extended period of time if she first obtained authorization and if the period away from campus was related to her work for the University of Illinois.

54.     The University exerted control over Plaintiff's day-to-day activities.

55.     The University exerted control over other Physics Department Postdoctoral Research Associates' day-to-day activities.

56.     Plaintiff performed the same work and job duties performed by other Physics Department Postdoctoral Research Associates at the University of Illinois.

57.     Plaintiff performed her job up to her employer's legitimate workplace expectations.

58.     Dr. Leggett was Plaintiff's direct supervisor.

59.    Dr. Leggett repeatedly complimented and thanked Plaintiff for her contributions and on her performance as a Postdoctoral Research Associate.

60.    Dr. Leggett repeatedly requested Plaintiff continue her Postdoctoral Research Associate work and/or asked her to return to assist him on his ongoing research.

## PLAINTIFF OBSERVED AND COMPLAINED ABOUT AGE DISCRIMINATION

61.    After beginning her employment at the University of Illinois, Plaintiff observed that similarly situated Postdoctoral Research Associates in the Physics Department were substantially younger than she was.

62.    Beginning in 2011 and continuing thereafter, Plaintiff met with Defendant Donnelly, who was the primary Human Resources representative for the Physics Department.

63.    Plaintiff told Donnelly that she was concerned about the Department's apparent preference for younger employees.

64.    Plaintiff informed Donnelly that she did not want her age to be a detriment to her present and future opportunities at the University of Illinois.

65.    Given the extreme age disparity between Plaintiff and most of her similarly situated Postdoctoral Research colleagues in the Department, Plaintiff requested that Donnelly keep her age a "secret."

66.    Plaintiff told Donnelly that she would try to appear younger so that she could "fit in."

67.    Donnelly encouraged Plaintiff to do what she could to look younger.

68.     In 2011, Donnelly agreed to keep Plaintiff's age "a secret" and stated she would only disclose it to others "if absolutely necessary."

69.     Donnelly told Plaintiff that Physics Department Chairman Dale Van Harlingen, PhD. was the head of the department and was responsible overseeing staffing within the department.

70.     Donnelly told Plaintiff that she would not disclose Plaintiff's age to Dr. Van Harlingen.

71.     Donnelly did not dispel Plaintiff's concerns that age discrimination permeated the employment practices within the University of Illinois Physics Department.

72.     Donnelly confirmed that Plaintiff's age discrimination concerns with employment practices in the University of Illinois' Physics Department were true.

73.     Donnelly suggested that age discrimination in employment was at the direction or through the internal policies directed by Dr. Van Harlingen.

74.     On at least four occasions between 2011 and early 2016, Plaintiff discussed concerns relating to age discrimination in the Physics Department's employment practices.

75.     By 2016, Donnelly became upset that Plaintiff continued discussing age-related issues.

76.     Donnelly became upset when Plaintiff continued discussing age-discrimination-related concerns.

77.     Donnelly told Plaintiff that her job at the University of Illinois "will be ending."

**Defendants Blocked Plaintiff From Renewing Her Visa**

78.     In 2011, Plaintiff originally obtained a J-1 visa.

79.     A J-1 visa is only good for five (5) years, at which time a visa applicant

must wait two (2) years before it can be renewed as a "J-1."

80.     Plaintiff's J-1 visa expired in 2016.

81.     In 2016, Plaintiff was immediately eligible to apply for another J-1 visa.

82.     Instead, Plaintiff had to apply for a TN-visa.

83.     A TN-visa (or "NAFTA visa") applies to Canadian and Mexican foreign

workers seeking to work in the United States.

84.     In order to obtain a TN-visa, Plaintiff needed a letter from her employer

showing that she had a job so long as her visa status was approved.

85.     In 2016, Plaintiff asked Donnelly to assist her with her visa application by

providing a letter from the University confirming her job.

86.     Donnelly told Plaintiff she had informed Dr. Van Harlingen of Plaintiff's age

and that after doing so, Dr. Van Harlingen and the Physics Department refused to assist

Plaintiff's application for a visa renewal.

87.     Dr. Leggett supported Plaintiff continuing to work with him and met with

University Counsel, Defendant Craig Hoefer.

88.     Dr. Leggett informed Hoefer of the circumstances surrounding Plaintiff's

employment, her need for a letter to accompany her visa application and that Dr.

Leggett wanted Plaintiff to continue as his Postdoctoral Research Associate.

89.     Later, during the same day that Dr. Leggett met with Hoefer, Donnelly became very angry with the Plaintiff for elevating her concerns via Dr. Leggett up to the University Counsel, Hoefer.

90.     Donnelly told Plaintiff "You'll never get a TN visa" and criticized Plaintiff based on her age and that Plaintiff did not belong in that Department.

91.     Upon information and belief, the Physics Department, through Van Harlingen, Donnelly and Hoefer submitted a proposal to the Board by which Plaintiff's employment would terminate on or about September 18, 2016.

92.     On information and belief, on or about September 8, 2016, the Board approved Plaintiff's termination to be effective September 18, 2016.

93.     However, on September 20, 2016, Donnelly, acting on her own or at Van Harlingen's and/or Hoefer's direction, removed Plaintiff's access to her office.

94.     Even though Plaintiff's employment was officially terminated, Dr. Leggett asked Plaintiff to continue her work and continued meeting with Plaintiff and instructing her on ongoing research projects.

95.     From September-October, 2016, Plaintiff continued to perform work for Dr. Leggett, and when necessary, used classrooms and other open rooms to set up her laptop and perform her work.

96.     The University of Illinois permitted Plaintiff to continue to come into work and perform work during this time, albeit without pay.

**Plaintiff Sought Reinstatement But Defendants Refused To Reinstate Plaintiff After She Complained About Age Discrimination, Equal Pay And FLSA Violations**

97.     In September, 2016, Plaintiff met with Associate Chancellor, Katherine Galvin ("Galvin").

98.     Galvin worked out of the Provost's office and served as the liaison between the administration and the Board of Trustees.

99.     In that meeting, Plaintiff complained about the way she was treated as an older employee.

100.    Plaintiff told Galvin that other Postdoctoral Research Associates were paid, and she was never paid as a University of Illinois employee.

101.    Plaintiff told Galvin that she was continuing to perform the same work and tasks for Dr. Leggett and at his instruction and under his supervision, but that she now had to do this work off-site or in classrooms.

102.    Plaintiff told Galvin she was seeking reinstatement so that she could be afforded the same rights and privileges other employees had while perform work for the University and its research professors.

103.    Galvin acknowledged Plaintiff's complaints that: she had worked for years without being paid; she requested she be reinstated with a salary; other (younger, male) employees were given preferential treatment; and that non-Canadian foreign employees were provided assistance with their visa applications.

104.    Several weeks later, Galvin responded to Plaintiff, denied her requests for reinstatement and for pay, and told Plaintiff that even if Dr. Leggett liked her, the University would never bring Plaintiff back.

105.    Galvin refused to reinstate Plaintiff and refused to provide any legitimate reason why Plaintiff could not be reinstated to a paid Postdoctoral Research position.

**Defendants Have Continued To Retaliate Against Plaintiff**

106.    Dr. Leggett continued requesting Plaintiff to perform work for him and the University of Illinois, and Plaintiff continued to perform work for the University of Illinois' ongoing research projects.

107.    Dr. Leggett even provided Plaintiff money to help her pay for travel expenses so that she could travel back and forth between Montreal, Quebec, Canada and Illinois.

108.    However, in November, 2016, Donnelly, acting on her own or at Van Harlingen's and/or Hoefer's direction, informed other employees that Plaintiff was barred from entering University of Illinois facilities.

109.    As a result, Plaintiff was forced to meet with Dr. Leggett at a coffee shop to discuss the progress and goals of his research projects.

110.    Plaintiff complained to the University of Illinois' Office of Diversity, Equity and Access ("ODEA") about her previous complaints, Donnelly, Van Harlingen and/or Hoefer's reaction to her continued work for the University and Dr. Leggett and refusal to provide assistance for her visa.

111.    One of the ODEA officers told Plaintiff that Donnelly's actions were "illegal" and that Plaintiff could not be banned from peacefully meeting with University Personnel in a university building.

112.    During her meeting with ODEA, Plaintiff again requested reinstatement and discussed issues related to never being paid a salary and renewing her visa.

113.    ODEA did not promptly or adequately investigate or respond to Plaintiff's complaints or request for reinstatement.

114.    Throughout 2017, Plaintiff continued to work for the University of Illinois and assist with Dr. Leggett's research projects – sometimes remotely from Canada, and sometimes traveling back to Illinois.

115.    During 2017, Plaintiff continued to complain to the University of Illinois and request reinstatement to the job she was still largely performing, for assistance in obtaining a new visa and to stop discriminating against her on the basis of her age.

116.    On October 26, 2017, while Plaintiff was in Champaign, Illinois continuing to work for the University of Illinois and Dr. Leggett, Defendant Hoefer retaliated against Plaintiff for her complaints of discrimination by instructing Plaintiff cease all communication and collaborative activities with Dr. Leggett and that he had instructed Dr. Leggett of the same.

117.    Shortly thereafter, in November, 2017, Jose Verde, a fellow researcher, contacted Plaintiff and told her that Dr. Leggett still wanted her to be involved in Dr. Leggett's continuing research but that the University of Illinois would not permit him to communicate with Plaintiff any longer.

**COUNT I**
**VIOLATION OF 1983-EQUAL PROTECTION (AGE)**
**(Against the Board – Seeking Declaratory and Equitable Relief)**

118.    The Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 as and for this paragraph.

119.    The Plaintiff at all relevant times was a member of a protected class based upon her age.

120.    At all relevant times the Defendant had a custom, policy and/or practice based upon its actual practices and based upon the decisions of one or more of its final policy makers to discriminate against research staff employees in the Physics Department, such as Plaintiff, on the basis of age.

121.    The Board of Trustees was responsible for setting and overseeing employment decisions affecting the University of Illinois Physics Department.

122.    The Board of Trustees, on its own, or acting on the advice of Dr. Van Harlingen, favored substantially younger workers in Postdoctoral Research positions and refused to employ substantially older workers in those positions.

123.    Upon information and belief, the Board of Trustees employs more than forty (40) employees as Postdoctoral Research Associates in its Physics Department.

124.    Upon information and belief, as of 2016-2017, the Board of Trustees only employed one person other than the Plaintiff as a Postdoctoral Research Associate or Research Associate who was over fifty (50) years.

125.    Upon information and belief, after Plaintiff was terminated, the Board of Trustees hired several employees to fill jobs as Postdoctoral Research Associates – all of whom are believed to be substantially younger than the Plaintiff.

126.    As a final policymaker, the Board of Trustees intentionally discriminated against Plaintiff and other similarly situated job applicants based on age by giving more favorable treatment (retention) to substantially younger workers.

127.    Alternatively, Defendant Dr. Van Harlingen, as the Physics Department Chairman, and/or Donnelly, as the Department's HR Representative were responsible for setting and overseeing employment decisions affecting the University of Illinois

Physics Department and was involved in making employment recommendations to the Board of Trustees.

128.    Dr. Van Harlingen and/or Donnelly acted as a cat's paw to the Board of Trustees, causing the Board to engage in discriminatory employment practices within its Physics Department and causing the Board to terminate Plaintiff's employment.

129.    The Board violated the Plaintiff's right to equal protection based upon the decision of a final policymaker who was empowered and authorized to make a decision to terminate the Plaintiff's employment.

130.    The Board violated the Plaintiff's right to equal protection when it turned a blind eye toward its discriminatory practices and its other wrongful departure from its own policy with respect to equal opportunity employment.

131.    Defendant treated Plaintiff less favorably than substantially younger similarly situated Postdoctoral Research Associates.

132.    Defendant treated substantially younger similarly situated Postdoctoral Research Associates more favorably than Plaintiff.

133.    Defendant paid substantially younger Postdoctoral Research Associates.

134.    Defendant did not pay Plaintiff.

135.    Defendant terminated Plaintiff.

136.    Defendant retained and hired substantially younger Postdoctoral Research Associates.

137.    Defendant supported visa applications for younger workers.

138.    Defendant did not support Plaintiff's visa application.

139.    Defendant permitted substantially younger Postdoctoral Research Associates to collaborate with Defendant's professors.

140.    Defendant barred Plaintiff from collaborating and continuing to perform work with and for Defendant's professors.

141.    The Board's selection of Plaintiff for termination was not based on budget-related purposes, as Plaintiff had not been receiving pay for her years of work.

142.    The Board did not terminate Plaintiff for poor performance.

143.    Upon information and belief, the Board, through Dr. Van Harlingen and/or Donnelly assisted younger foreign employees with paperwork those employees needed for their visa applications.

144.    The Board refused to provide a letter to Plaintiff that would confirm her employment would continue so long as her visa application was granted.

145.    The Board's conduct was to terminate Plaintiff because she was 64 years old – far older than the other Physics Department Postdoctoral Research Associates who were retained and/or hired thereafter.

146.    The Defendants' intentionally selected Plaintiff for termination based on her age.

147.    The Defendant does not have any truthful reason that is rationally related to a legitimate state interest for refusing to assist Plaintiff with paperwork needed for her visa application and for terminating Plaintiff.

148.    The Defendants did not attempt to block or limit all communication between younger Postdoctoral Research Associates and their mentors, but only sought to block Plaintiff's communication with her mentor.

149.     This varying treatment between older and younger employees is so unrelated to the achievement of any combination of legitimate purposes that the only conclusion which can be drawn is that the Defendant's selection of Plaintiff for termination and/or to refuse to assist with a letter in connection with her visa was irrational.

150.     Plaintiff was irrationally treated less favorably than similarly situated younger employees.

151.     As a direct and proximate result, the Plaintiff has been damaged as a result of the constitutional violations and deprivation of her right to Equal Protection.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court:

     a.  Enter judgment in her favor and against the Defendant Board of Trustees on her Count I-Equal Protection claim;

     b.  Award plaintiff attorneys' fees pursuant to 42 U.S.C. §1988;

     c.  Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

     d.  Enjoin the Board of Trustees from interfering in her communications or ability to collaborate with Dr. Leggett;

     e.  Award Plaintiffs her reasonable costs associated with bringing her claims;

     f.  Award Plaintiff all other relief as the Court deems appropriate and just.

**COUNT II**
**VIOLATION OF 1983-EQUAL PROTECTION (NATIONAL ORIGIN)**
**(Against the Board – Seeking Declaratory and Equitable Relief)**

152.   The Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 as and for this paragraph.

153.   The Plaintiff at all relevant times was a member of a protected class based upon her national origin - Canadian.

154.   At all relevant times the Defendant had a custom, policy and/or practice based upon its actual practices and based upon the decisions of one or more of its final policy makers to discriminate against research staff employees in the Physics Department, such as Plaintiff, on the basis of national origin.

155.   Upon information and belief, the Board of Trustees employs more than forty (40) employees as Postdoctoral Research Associates in its Physics Department.

156.   Many of the Postdoctoral Research Associate employees in the University of Illinois Physics Department are non-Canadian foreign doctorate employees who need occasional assistance with visa-related issues.

157.   Upon information and belief, as of 2016, the Plaintiff was the only Canadian Postdoctoral Research Associate in the University of Illinois' Physics Department.

158.   Upon information and belief, after Plaintiff was terminated, the Board of Trustees hired several employees to fill jobs as Postdoctoral Research Associates – all of whom are believed to be non-Canadian.

159.   As a final policymaker, the Board of Trustees intentionally discriminated against Plaintiff and other similarly situated job applicants based on age by giving more

favorable treatment (retention and assistance with visa paperwork) to non-Canadian workers.

160.    Alternatively, Donnelly, as the Department's HR Representative was responsible for setting and overseeing employment decisions affecting the University of Illinois Physics Department and was involved in making employment recommendations to the Board of Trustees.

161.    Donnelly acted as a cat's paw to the Board of Trustees, refusing to assist with Plaintiff's visa application, causing the Board to engage in discriminatory employment practices within its Physics Department and causing the Board to terminate Plaintiff's employment.

162.    Based upon the decision of a final policymaker who was empowered and authorized to make a decision to terminate the Plaintiff's employment, the Board violated the Plaintiff's right to equal protection and/or turned a blind eye toward its discriminatory practices and its other wrongful departure from its own policy with respect to equal opportunity employment.

163.    Upon information and belief, the Board, through Donnelly assisted younger foreign employees with paperwork those employees needed for their visa applications.

164.    The Board refused to provide a letter to Plaintiff that would confirm her employment would continue so long as her visa application was granted.

165.    The Defendants' intentionally refused to assist Plaintiff with her visa.

166.    Defendant assisted other foreign, but non-Canadian Physics Department employees with their visas.

21

167.   Defendant effectively selected Plaintiff for termination and discriminated against her in her visa application and employment based on her national origin.

168.   The Defendants significantly varied their treatment between Canadian and non-Canadian Physics Department Postdoctoral Research Associates as evidenced by the Defendant's termination of Plaintiff combined with the hiring or retention of non-Canadian Postdoctoral Research Associates, almost all of whom were higher paid than Plaintiff.

169.   The Defendants did not attempt to block or limit all communication between non-Canadian Postdoctoral Research Associates and their mentors.

170.   Defendants only sought to block Plaintiff's communication with her mentor.

171.   Plaintiff was irrationally treated less favorably than similarly situated younger employees.

172.   As a direct and proximate result the Plaintiff has been damaged as a result of the constitutional violations and deprivation of her right to Equal Protection.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court:

    a.  Enter judgment in her favor and against the Defendant Board of Trustees on her Count II-Equal Protection claim;

    b.  Award plaintiff attorneys' fees pursuant to 42 U.S.C. §1988;

    c.  Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

    d.  Enjoin the Board of Trustees from interfering in her communications or ability to collaborate with Dr. Leggett;

    e.   Award Plaintiffs her reasonable costs associated with bringing her claims;

    f.   Award Plaintiff all other relief as the Court deems appropriate and just.

## COUNT III
## <u>VIOLATION OF 1983-EQUAL PROTECTION (AGE)</u>
### (Against Van Harlingen, Donnelly, and Hoefer, individually)

173.    The Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 as and for this paragraph.

174.    Donnelly, on her own or acting at the instruction of Hoefer or Dr. Van Harlingen intentionally refused employment opportunities in Physics Department research positions to older workers.

175.    Donnelly, on her own or acting at the instruction of Hoefer or Dr. Van Harlingen instructed that Plaintiff be excluded from the facilities.

176.    Donnelly, on her own or acting at the instruction of Hoefer or Dr. Van Harlingen provided paid employment to younger Postdoctoral Research Associates.

177.    Donnelly and Dr. Van Harlingen favored substantially younger workers in Postdoctoral Research positions and refused to employ substantially older workers in those positions.

178.    Donnelly mocked Plaintiff for trying to fit in with her appearance and trying to make her age go unnoticed and terminated Plaintiff for complaining about age-based discriminatory employment practices amongst Physics Department research associate positions.

179.    Donnelly refused to assist Plaintiff in obtaining a TN-visa, but assisted other younger employees with obtaining their visas.

180.   Dr. Van Harlingen and/or Donnelly acted as a cat's paw to the Board of Trustees, causing the Board to engage in discriminatory employment practices within its Physics Department and causing the Board to terminate Plaintiff's employment.

181.   Donnelly, Van Harlingen and Hoefer continued to discriminate against Plaintiff when Plaintiff continued to attempt to work with Dr. Leggett and blocked Plaintiff's access to the University buildings and eventually blocked her from communicating with Dr. Leggett.

182.   Donnelly, Van Harlingen and Hoefer violated the Plaintiff's right to equal protection and/or turned a blind eye toward its discriminatory practices and its other wrongful departure from the University of Illinois' own policy with respect to equal opportunity employment.

183.   The Defendants' intentionally selected Plaintiff for termination based on her age.

184.   The Defendants do not have any truthful reason for refusing to assist Plaintiff with paperwork needed for her visa application and for terminating Plaintiff that is rationally related to a legitimate state interest.

185.   The Defendants significantly varied their treatment between older and younger employees as evidenced by the Defendant's termination of Plaintiff combined with the hiring or promotion of younger, higher paid people to the position of Postdoctoral Research Associate and the retention of younger, less experienced Physics Department Postdoctoral Research Associates, all but one of whom were higher paid than Plaintiff.

186.    This varying treatment between older and younger employees is so unrelated to the achievement of any combination of legitimate purposes that the only conclusion which can be drawn is that the Defendants' selection of Plaintiff for termination and/or to refuse to assist with a letter in connection with her visa was irrational.

187.    Plaintiff was irrationally treated less favorably than similarly situated younger employees.

188.    As a direct and proximate result the Plaintiff has been damaged as a result of the constitutional violations and deprivation of her right to Equal Protection.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court:

a.  Enter judgment in her favor and against the individual Defendants on her Count III-Equal Protection claim;

b.  Award Plaintiff her backpay, lost wages and benefits to which she should have been entitled if she had been treated fairly relative to other substantially younger similarly situated employees;

c.  Award Plaintiff prejudgment interest;

d.  Award Plaintiff compensatory damages;

e.  Award plaintiff punitive damages against the individual Defendants only;

f.  Award Plaintiff attorneys' fees pursuant to 42 U.S.C. §1988;

g.  Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

h.  Enjoin the Defendants from interfering in Plaintiff's communications or ability to collaborate with Dr. Leggett;

i.  Award Plaintiffs her reasonable costs associated with bringing her claims;

j.  Award Plaintiff all other relief as the Court deems appropriate and just.

## COUNT IV
## VIOLATION OF 1983-EQUAL PROTECTION (NATIONAL ORIGIN)
### (Against Van Harlingen, Donnelly, and Hoefer, individually)

189.    The Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-172 as and for this paragraph.

190.    The Plaintiff at all relevant times was a member of a protected class based upon her national origin - Canadian.

191.    Upon information and belief, the Board of Trustees employs more than forty (40) employees as Postdoctoral Research Associates in its Physics Department.

192.    Many of the Postdoctoral Research Associate employees in the University of Illinois Physics Department are non-Canadian foreign doctorate employees who need occasional assistance with visa-related issues.

193.    Upon information and belief, as of 2016, the Plaintiff was the only Canadian Postdoctoral Research Associate in the University of Illinois' Physics Department.

194.    The Defendants intentionally refused to assist Plaintiff with her visa because it was a TN-visa.

195.    Defendant Donnelly assisted other foreign, non-Canadian Physics Department employees with non-TN visas.

196.    Defendants effectively selected Plaintiff for termination because they would not assist with a TN-visa and discriminated against her in her visa application and employment based on her national origin.

197.    The Defendants do not have any truthful reason for refusing to assist Plaintiff with paperwork needed for her visa application and for terminating Plaintiff that is rationally related to a legitimate state interest.

198.    After Plaintiff was terminated, the Defendants hired several employees to fill jobs as Postdoctoral Research Associates – all of whom are believed to be non-Canadian.

199.    Defendants intentionally discriminated against Plaintiff and other similarly situated job applicants based on age by giving more favorable treatment (retention and assistance with visa paperwork) to non-Canadian workers.

200.    Alternatively, Donnelly, as the Department's HR Representative was responsible for setting and overseeing employment decisions affecting the University of Illinois Physics Department and was involved in making employment recommendations to the Board of Trustees.

201.    Donnelly acted as a cat's paw to the Board of Trustees, refusing to assist with Plaintiff's visa application, causing the Board to engage in discriminatory employment practices within its Physics Department and causing the Board to terminate Plaintiff's employment.

202.    When Plaintiff sought reinstatement and complained about discrimination and failure to pay wages, Defendants Donnelly, Van Harlingen and Hoefer again

discriminated against Plaintiff, refused to permit reinstatement and blocked her from accessing the facilities and from interacting with Dr. Leggett.

203.    Defendants violated the Plaintiff's right to equal protection and/or turned a blind eye toward its discriminatory practices and its other wrongful departure from its own policy with respect to equal opportunity employment.

204.    This varying treatment between Canadian and non-Canadian employees is so unrelated to the achievement of any combination of legitimate purposes that the only conclusion which can be drawn is that the Defendant's selection of Plaintiff for termination and/or to refuse to assist with a letter in connection with her visa was irrational.

205.    Plaintiff was irrationally treated less favorably than similarly situated younger employees.

206.    As a direct and proximate result the Plaintiff has been damaged as a result of the constitutional violations and deprivation of her right to Equal Protection.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court:

a.  Enter judgment in her favor and against the individual Defendants on her Count IV-Equal Protection claim;

b.  Award Plaintiff her backpay, lost wages and benefits to which she should have been entitled if she had been treated fairly relative to other substantially younger similarly situated employees;

c.  Award Plaintiff prejudgment interest;

d.  Award Plaintiff compensatory damages;

e.  Award plaintiff punitive damages against the individual Defendants only;

f.  Award Plaintiff attorneys' fees pursuant to 42 U.S.C. §1988;

g.  Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

h.  Enjoin the Defendants from interfering in Plaintiff's communications or ability to collaborate with Dr. Leggett;

i.  Award Plaintiffs her reasonable costs associated with bringing her claims;

j.  Award Plaintiff all other relief as the Court deems appropriate and just.

**COUNT V**
**VIOLATION OF THE AGE DISCRIMINATION IN**
**EMPLOYMENT ACT (ADEA) (DISCRIMINATION/RETALITION)**
**(Against Board of Trustees)**

207.  The Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 as and for this paragraph.

208.  At all relevant times the Plaintiff was a member of a protected class over the age of 40.

209.  The Defendant discriminated against the Plaintiff by treating similarly situated younger employees more favorably.

210.  The Defendant discriminated against the Plaintiff and violated the ADEA (29 U.S.C. § 621 *et al.)*, and the Board's own policy regarding equal employment opportunities, by engaging in one or more of the following acts:

a.  retaining younger Physics Department Postdoctoral Research Associate employees over older employees;

b.  terminating older Physics Department Postdoctoral Research Associate employees, including the Plaintiff;

29

    c.  hiring younger Physics Department Postdoctoral Research Associate employees;

    d.  paying younger Physics Department Postdoctoral Research Associate employees;

    e.  refusing to pay older Physics Department Postdoctoral Research Associate employees;

    f.  refusing to rehire or reinstate older Physics Department Postdoctoral Research Associate employees, including the Plaintiff;

    g.  barring older job applicants or rehire candidates from University facilities;

    h.  barring older job applicants or rehire candidates from interacting with or communicating with University faculty.

211.   The Plaintiff suffered a tangible adverse employment action, including one or more of the following:

    a.  Failure to promote;

    b.  Failure to pay;

    c.  Termination;

    d.  Failure to rehire.

212.   Defendant has impaired Plaintiff's ability to mitigate damages or find replacement employment by refusing to permit her to interact or communicate with her revered mentor, Dr. Leggett and/or obtain referrals or letters of recommendation from Dr. Leggett.

213.   Plaintiff was treated less favorably than similarly situated younger workers.

214.   Plaintiffs age was the "but-for" cause of the tangible adverse employment actions Defendant has taken against Plaintiff.

215.    Plaintiff was damaged as the proximate result of Defendants' unlawful acts.

216.    Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) following Defendants continuing actions regarding age discrimination. (Ex. A).

217.    The EEOC issued a Right to Sue letter to Plaintiff. (Ex. B).

218.    Plaintiff files this lawsuit within 90 days of her receipt of her Right to Sue letter.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant and:

a.  Award Plaintiff her backpay, lost pay and benefits and lost earnings commensurate with what other younger Postdoctoral Research Associates were paid;

b.  Award Plaintiff liquidated damages in an amount equal to her backpay;

c.  Award Plaintiff such other damages as are permitted under the ADEA including prejudgment interest and other forms of damages;

d.  Award Plaintiff her attorneys' fees;

e.  Reinstate Plaintiff to her prior position pending her visa renewal and issue injunctive relief requiring Defendants cooperate and provide a letter confirming Plaintiff's employment opportunity which Plaintiff may use to submit with a visa application; and

f.  Award Plaintiffs her reasonable costs associated with bringing her claims;

g.  Award such other relief as the Court deems appropriate and just.

**COUNT VI**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**(42 U.S.C. § 2000e, *et seq.*) (NATIONAL ORIGIN DISCRIMINATION/RETALIATION)**
**(Against Board of Trustees)**

219. The Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-206 as and for this paragraph.

220. At all relevant times the Plaintiff was a member of a protected class based on her national origin – Canadian.

221. The Defendant discriminated against the Plaintiff by treating similarly situated non-Canadian employees more favorably.

222. The Defendant discriminated against the Plaintiff and violated Title VII (42 U.S.C. § 2000e *et al.)*, and the Board's own policy regarding equal employment opportunities, by engaging in one or more of the following acts:

    a. Assisting non-Canadian employees in obtaining visas;

    b. Refusing to assist Canadian employees, including Plaintiff in obtaining TN-visas;

    c. Retaining non-Canadian Physics Department Postdoctoral Research Associate employees over Canadian employees;

    d. Hiring non-Canadian Physics Department Postdoctoral Research Associate employees;

    e. Paying non-Canadian Physics Department Postdoctoral Research Associate employees;

    f. Refusing to pay Canadian Physics Department Postdoctoral Research Associate employees, including Plaintiff;

    g. Refusing to rehire or reinstate Canadian Physics Department Postdoctoral Research Associate employees, including the Plaintiff;

    h. Barring Canadian job applicants or rehire-candidates from University facilities;

32

      i.   Barring Canadian job applicants or rehire candidates from interacting with or communicating with University faculty.

223.   The Plaintiff suffered a tangible adverse employment action, including one or more of the following:

      a.  Failure to promote;

      b.  Failure to pay;

      c.  Termination;

      d.  Failure to rehire.

224.   Defendant has impaired Plaintiff's ability to mitigate damages or find replacement employment by refusing to permit her to interact or communicate with her revered mentor, Dr. Leggett and/or obtain referrals or letters of recommendation from Dr. Leggett.

225.   Plaintiff was treated less favorably than similarly situated non-Canadian workers.

226.   Plaintiffs National Origin was the "but-for" cause of the tangible adverse employment actions Defendant has taken against Plaintiff.

227.   Plaintiff was damaged as the proximate result of Defendants' unlawful acts.

228.   Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) following Defendants continuing actions regarding national origin discrimination. (Ex. A).

229.   The EEOC issued a Right to Sue letter to Plaintiff. (Ex. B).

230.    Plaintiff files this lawsuit within 90 days of her receipt of her Right to Sue letter.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court enter judgment in her favor and against the Defendant and:

     a.  Award Plaintiff her backpay, lost pay and benefits and lost earnings commensurate with what other younger Postdoctoral Research Associates were paid;

     b.  Award Plaintiff compensatory damages, including for (but not limited to) her out-of-pocket expenses incurred in attempting to continue her work and mitigate damages, and an award for pain, suffering, emotional distress, and loss of a normal life;

     c.  Award Plaintiff her attorneys' fees;

     d.  Reinstate Plaintiff to her prior position pending her visa renewal and issue injunctive relief requiring Defendants cooperate and provide a letter confirming Plaintiff's employment opportunity which Plaintiff may use to submit with a visa application; and

     e.  Award Plaintiffs her reasonable costs associated with bringing her claims;

     f.  Award such other relief as the Court deems appropriate and just.

## COUNT VII
## VIOLATION OF THE EQUAL PAY ACT (29 U.S.C. § 206(d))
### (Against Board of Trustees)

231.    Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 as and for this paragraph.

232.    Plaintiff is female and is entitled to protected status under the Equal Pay Act. (29 U.S.C. § 206(d)).

233.    Defendants violated the Equal Pay Act  by:

    a. Arbitrarily paying male Physics Department Postdoctoral Research Associates with a salary averaging in excess of $50,000/year;

    b. Arbitrarily paying female employees at a lower amount on average than male employees, and in some cases, including the case of the Plaintiff, not paying employees at all.

234. Defendants violated the Equal Pay Act intentionally and willfully.

235. Plaintiff performed the same duties and responsibilities of male Postdoctoral Research Associates that were paid.

236. As a result of Defendants' discriminatory conduct violating the Equal Pay Act, Defendants caused and continue to cause Plaintiff damages in the form of reduced salaries, wages and benefits.

237. Plaintiff's damages are of an on-going and continuous nature.

WHEREFORE, Plaintiff prays that this Honorable Court:

    a. Enter judgment in Plaintiff's favor and against the Defendant Board of Trustees on her Count VIII-Equal Pay Act claim;

    b. Award Plaintiff her backpay, lost wages and benefits to which she should have been entitled if she had been treated fairly relative to other similarly situated male Physics Department Postdoctoral Research Associate employees;

    c. Award Plaintiff prejudgment interest;

    d. Award Plaintiff liquidated damages under the Equal Pay Act;

    e. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert or participation with them from:

        1. continuing to discriminate against the Plaintiff and other similarly situated women;
        2. Violating the Equal Pay Act; and or

        3. Utilizing a compensation plan which pays male Postdoctoral Research Associates a higher salary or

compensation than females holding those same positions.

4. Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

5. Enjoin the Defendants from interfering in Plaintiff's communications or ability to collaborate with Dr. Leggett;

f. Award Plaintiffs her reasonable costs associated with bringing her claims;

g. Award Plaintiff all other relief as the Court deems appropriate and just.

## COUNT VIII
## VIOLATION OF THE FAIR LABOR STANDARDS ACT (29 U.S.C. § 206)
### (Against Board of Trustees)

238.  Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 and 231-237 as and for this paragraph.

239.  Plaintiff was employed as a Postdoctoral Research Associate for the Board of Trustees of the University of Illinois.

240.  Plaintiff qualifies as a covered "employee" within the definition of the Fair Labor Standards Act, as Plaintiff was an individual employed by a State, political subdivision of a State or an interstate governmental agency.

241.  Other employees employed in the same position as Plaintiff (Physics Department Postdoctoral Research Associates) were paid on average in excess of $50,000 per year.

242.  Defendant failed and refused to pay Plaintiff for the work she performed.

243.  Plaintiff was not an intern.

244.  Plaintiff did not receive college or educational credit working for the Defendant.

245.  Defendant continued to "employ" Plaintiff, as that term is defined in the FLSA until 2017, as it continued to "suffer or permit" Plaintiff to perform the same research work she was hired to perform since 2011.

246.  Plaintiff is entitled to at least minimum wage under the Fair Labor Standards Act for the time she worked for the Board of Trustees.

247.  Plaintiff complained about the lack of pay to Assistant Chancellor Galvin, but her request for pay was denied, even though almost every other Physics Department Postdoctoral Research Associate was paid a salary.

248.  Defendants violated the Fair Labor Standards Act by failing to pay Plaintiff at least minimum wage for her services.

249.  Defendants violated the Fair Labor Standards Act intentionally and willfully.

250.  As a result of Defendants' intentional conduct violating the Fair Labor Standards Act, Defendants caused and continue to cause Plaintiff damages.

251.  Plaintiff's damages are of an on-going and continuous nature.

WHEREFORE, Plaintiff prays that this Honorable Court:

    a.  Enter judgment in Plaintiff's favor and against the Defendant Board of Trustees on her Count VIII-Fair Labor Standards Act claim;

    b.  Award Plaintiff her backpay and lost wages which she earned but has not been paid;

    c.  Award Plaintiff prejudgment interest;

    d.  Award Plaintiff liquidated damages under the Fair Labor

        Standards Act;

    e.  Enjoin the Defendants, their officers, agents, employees and anyone acting in concert or participation with them from:

        1.  continuing to discriminate against the Plaintiff and other similarly situated women or Postdoctoral Research Associates who are otherwise not being paid;

        2.  Violating the Fair Labor Standards Act; and or

        3.  Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

        4.  Enjoin the Defendants from interfering in Plaintiff's communications or ability to collaborate with Dr. Leggett;

    f.  Award Plaintiffs her reasonable costs associated with bringing her claims;

    g.  Award Plaintiff all other relief as the Court deems appropriate and just.

## COUNT IX
## VIOLATION OF THE ILLINOIS MINIMUM WAGE LAW
### (Against the Board)

252.   Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 and 231-251 as and for this paragraph.

253.   At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the Illinois Minimum Wage Law (820 ILCS 105/1, *et seq.*).

254.   Plaintiff, as a Postdoctoral Research Associate were entitled to protection under the Illinois Minimum Wage Law.

255.   As such, Plaintiff was entitled to be paid at least the prevailing minimum wage in the State of Illinois for the work she performed for Defendant.

256.   As a result of Defendant's failure to pay Plaintiff for the hours she worked in accordance with the Illinois Minimum Wage Law, the Plaintiff has been damaged.

WHEREFORE, Plaintiff prays that this Honorable Court:

a. Enter judgment in Plaintiff's favor and against the Defendant Board of Trustees on her Count IX-Illinois Minimum Wage Law claim;

b. Award Plaintiff her backpay and lost wages at least at a level commensurate with the prevailing minimum wage in Illinois to which she should have been entitled;

c. Award Plaintiff prejudgment interest under the Illinois Interest Act;

d. Award Plaintiff statutory damages of 2% per month on amounts unpaid or underpaid that are owed to the Plaintiff under the Illinois Minimum Wage Law;

e. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert or participation with them from:

1. continuing to discriminate against the Plaintiff and other similarly situated women;

2. Violating the Illinois Minimum Wage Law; and or

3. Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

4. Enjoin the Defendants from interfering in Plaintiff's communications or ability to collaborate with Dr. Leggett;

f. Award Plaintiffs her reasonable costs associated with bringing her claims;

g. Award Plaintiff all other relief as the Court deems appropriate and just.

**COUNT X**
**VIOLATION OF THE ILLINOIS WAGE PAYMENT AND COLLECTION ACT**
**(Against the Board)**

257.   Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-117 and 231-256 as and for this paragraph.

258.   At all relevant times, the Board of Trustees was Plaintiff's employer within the meaning of the Wage Payment and Collection Act ("IWPCA").

259.   Plaintiff was entitled to be paid for all wages that she earned, including those the Defendant was responsible for paying pursuant to statute, as "final compensation" as of the date of her "termination."

260.   Defendant failed to pay Plaintiff for wages she earned based on time she worked prior to and as of the date of their termination.

261.   As a result of Defendant's failure to pay Plaintiff her entire final compensation as of the date she was terminated, the Plaintiff has been damaged and continues to suffer damages.

262.   Further, Defendants have retaliated against Plaintiff in violation of the Wage Payment and Collection Act by failing to rehire Plaintiff, barring Plaintiff from Defendant's premises and barring all communication between her and her mentor, Dr. Leggett.

WHEREFORE, Plaintiff prays that this Honorable Court:

   a.   Enter judgment in Plaintiff's favor and against the Defendant Board of Trustees on her Count X-Illinois Wage Payment and Collection Act claim;

   b.   Award Plaintiff her final compensation which should have been owed, at least at a level commensurate with the prevailing minimum wage in Illinois to which she should have been entitled from 2011 and through at least the date of her termination in 2016;

c. Award Plaintiff prejudgment interest under the Illinois Interest Act;

d. Award Plaintiff statutory damages of 2% per month on amounts due and owing which should have been paid as "Final Compensation" under the Illinois Wage Payment and Collection Act;

e. Enjoin the Defendants, their officers, agents, employees and anyone acting in concert or participation with them from:

   1. continuing to discriminate against the Plaintiff and other similarly situated women;

   2. Violating the Illinois Wage Payment and Collection Act; and or

   3. Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

   4. Enjoin the Defendants from interfering in Plaintiff's communications or ability to collaborate with Dr. Leggett;

f. Award Plaintiffs her reasonable costs associated with bringing her claims;

g. Award Plaintiff all other relief as the Court deems appropriate and just.

## COUNT XI
## <u>VIOLATION OF 1983-RETALIATION</u>
## (Against the Board – Seeking Declaratory and Equitable Relief)

252.   Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-172 as and for this paragraph.

253.   Plaintiff complained about discriminatory treatment against the Defendant.

254.   As a direct and proximate result of Plaintiff's complaining activities, the Defendant has taken a materially adverse employment action against the Plaintiff by:

a. Denying the Plaintiff a promotion or retention;

b. Terminating the Plaintiff;

c. Failing to assist Plaintiff in her visa application;

d. Barring Plaintiff from communicating with Defendant's professors.

255.    The Plaintiff has been damaged as a result of the constitutional violations and deprivation of her right to Equal Protection and retaliated against for complaining about these violations.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court:

a. Enter judgment in her favor and against the Defendant Board of Trustees on her Count XI-Retaliation claim;

b. Award plaintiff attorneys' fees pursuant to 42 U.S.C. §1988;

c. Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

d. Enjoin the Board of Trustees from interfering in her communications or ability to collaborate with Dr. Leggett;

e. Award Plaintiffs her reasonable costs associated with bringing her claims;

f. Award Plaintiff all other relief as the Court deems appropriate and just.

## COUNT XII
## <u>VIOLATION OF 1983-RETALIATION</u>
### (Against Van Harlingen, Donnelly, and Hoefer, individually)

256.    Plaintiff adopts, realleges and incorporates by reference all of paragraphs 1-172 and 252-255 as and for this paragraph.

257.    Plaintiff complained about discriminatory treatment against the Defendant.

258.    As a direct and proximate result of Plaintiff's complaining activities, the Defendant has taken a materially adverse employment action against the Plaintiff by:

   a.  Denying the Plaintiff a promotion or retention;

   b.  Terminating the Plaintiff;

   c.  Failing to assist Plaintiff in her visa application;

   d.  Barring Plaintiff from communicating with Defendant's professors.

259.    The Plaintiff has been damaged as a result of the constitutional violations and deprivation of her right to Equal Protection and retaliated against for complaining about these violations.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that this Court:

   a.  Enter judgment in her favor and against the individual Defendants on her Count XII-Retaliation claim;

   b.  Award Plaintiff her backpay, lost wages and benefits to which she should have been entitled if she had been treated fairly relative to other substantially younger similarly situated employees;

   c.  Award Plaintiff prejudgment interest;

   d.  Award Plaintiff compensatory damages;

   e.  Award plaintiff punitive damages against the individual Defendants only;

   f.  Award Plaintiff attorneys' fees pursuant to 42 U.S.C. §1988;

   g.  Reinstate Plaintiff to her position as a Postdoctoral Research Associate, provided she can obtain the appropriate visa and require Defendant to provide an appropriate letter that can be used to accompany Plaintiff's visa application;

   h.  Enjoin the Defendants from interfering in Plaintiff's communications or ability to collaborate with Dr. Leggett;

    i.   Award Plaintiffs her reasonable costs associated with bringing her claims;

    j.   Award Plaintiff all other relief as the Court deems appropriate and just.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully submitted,
HUNT & ASSOCIATES, P.C.


By: */s/ Keith L. Hunt (electronic signature*)
    An Attorney for Plaintiff

Keith L. Hunt
Bradley E. Faber
Hunt & Associates, P.C.
55 West Monroe
Suite 3600
Chicago, Illinois 60603
(312) 558-1300